# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re

**GUY L. GIUFFRE**,                                    Chapter 13

     Debtor                                         Case No. 15-14223-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**GUY L. GIUFFRE**,

     Plaintiff,

v.                                                     Adv. P. No. 16-1095

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2006-OPT5, ASSET-BACKED CERTIFICATES, SERIES 2006-OPT5**,

     Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion to Dismiss filed by Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2006-OPT5, Asset-Backed Certificates, Series 2006-OPT5 (the "Defendant" or "Deutsche Bank") with respect to the two-count Verified Complaint filed by Guy L. Giuffre (the "Plaintiff" or the "Debtor"). The Court heard the Motion, as well as the Debtor's Objection and Deutsche Bank's Reply to the Debtor's Objection, on September 16, 2016 and took the Motion under advisement.

In his Verified Complaint, the Debtor set forth two counts, one captioned "Objection to Claim" and the other, "Statute of Limitations." Pursuant to his Verified Complaint, the Debtor seeks a judgment declaring that the mortgage held by Deutsche Bank which encumbers his personal residence located at 28 Vineyard Avenue, Oak Bluffs, Massachusetts (the "property") is "void and has no effect as an encumbrance on the title to the property." The Debtor alleges that, because he did not execute the note secured by the mortgage on his property and although Deutsche Bank may have a claim, the claim is unenforceable against him personally *and his property* pursuant to 11 U.S.C. § 502(b)(1) (emphasis supplied).[1] In addition, the Debtor alleges that the note secured by the mortgage is subject to a six-year statute of limitations and "[m]ore than six years has passed since the promissory note (given by Alec Sohmer) went into default" rendering it and the mortgage encumbering the property unenforceable.

Deutsche Bank contends that the Debtor's claims are barred by the doctrine of res judicata because the United States Court of Appeals for the First Circuit affirmed an order

---

[1] Section 502 provides in pertinent part the following:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--
>
> > (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).

of the United States District Court for the District of Massachusetts granting, pursuant to

Fed. R. Civ. P. 12(b)(6), Deutsche Bank's motion to dismiss Giuffre's complaint seeking a

declaration that the mortgage on his property was void due to fraud. *See* Giuffre v.

Deutsche Bank Nat'l Trust Co., 759 F.3d 134 (1st Cir. 2014), *aff'g* C.A. No. 12–11510–JLT,

2013 WL 4587301, at 2 (D. Mass. Aug. 27, 2013).  Thus, the issue presented is whether the

Debtor's Verified Complaint is barred by the doctrine of res judicata or otherwise must

be dismissed because it fails to set forth claims that are plausible on their face.  *See*

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## II. BACKGROUND

The Debtor filed a Chapter 13 case on October 30, 2015.[2]  On April 20, 2016, his

former counsel filed a surrogate proof of claim on behalf of "Deutsche Bank/Ocwen."

The next day, the clerk issued a "Notice of Proof of Claim filed under Fed. R. Bankr. P.

3004."  The Notice provided, in pertinent part, the following:

> If you disagree with the amount or any aspect of this proof of claim, you
> must file an amended proof of claim. The deadline to file with the court an
> amended proof of claim is on or before JUNE 6, 2016. The amended proof
> of claim shall be filed with the court at the address provided below, or you
> may file electronically if you are a registered user of CM/ECF in this court.
> See MLBR Appendix 8. You shall also file a certificate of service with the
> court within seven (7) days of the filing of the amended proof of claim
> reflecting service of the amended proof of claim on the Debtor, the Debtor's
> attorney and the Trustee. To obtain a proof of claim form (Official Form
> 410) or to learn more about filing the amended claim form electronically,
> please visit www.mab.uscourts.gov.

---

[2] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re
Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy
court appropriately took judicial notice of its own docket.").

FAILURE TO FILE AN AMENDED PROOF OF CLAIM BY THIS DEADLINE MAY PERMANENTLY AFFECT YOUR RIGHTS TO DISTRIBUTION, IF ANY, UNDER THE PLAN, YOUR RIGHTS AGAINST THE DEBTOR(S), AND ANY RIGHTS AFTER THE PLAN COMPLETION AND DISCHARGE.

Deutsche Bank did not respond to the Court's Notice by either amending the proof of claim or moving to withdraw it before the June 6, 2016 deadline set forth in the Notice, although, as discussed below, it filed an Objection to the Debtor's initial Chapter 13 plan.

In the surrogate proof of claim, the Debtor listed the amount of Deutsche Bank's claim as $500,000 and the value of the property securing the claim as $466,475, as well as an arrearage of $5,500. On December 1, 2015, the Debtor filed a 60-month Chapter 13 plan through which he proposed a monthly plan payment of $102 and payment of $5,500 to Deutsche Bank for pre-petition arrears over the life of the plan. On January 12, 2016, Ocwen Loan Servicing, LLC, as servicer for Deutsche Bank filed an Objection to the Debtor's Chapter 13 plan in which it stated:

> It is anticipated that Secured Creditor's claim will show the pre-petition arrearage due Secured Creditor is $485,044.07, whereas the Plan proposes to pay only $5,500.00. Therefore, the Plan is not in compliance with the requirements of 11 U.S.C. §§ 1322(b)(3) and 1325(a)(5) and cannot be confirmed. Secured Creditor *objects to any plan which proposes to pay it anything less than $485,044.07 as the pre-petition arrearage over the life of the plan.*

(emphasis supplied). The Debtor responded to the Objection, stating: "Debtor does not dispute that he has pre-petition arrears. However, currently disputes [sic] the pre-petition arrears amount stated because Ocwen Loan Servicing, LLC has not filed a Proof of Claim and as such, requests an accounting from the bank [sic]." On May 16, 2016, however, the Debtor, through new counsel, filed a "Withdrawal of Response to Objection

4

to Confirmation."   The Court then entered the following order:   "In light of the Debtor's

withdrawal of his Response, the Objection is sustained.   The Debtor shall file an amended

plan within 30 days which comports with the Objection, failing which the case shall be

dismissed. The 05/20/16 hearing is canceled."

The Debtor filed an amended Chapter 13 plan on June 18, 2016, approximately two

weeks after filing his Verified Complaint.   Pursuant to his amended 36-month plan, the

Debtor proposed no payments to Deutsche Bank, averring that

> [T]he mortgage & promissory note are not enforceable for the reasons
> stated in Adversary Proceeding no. 16-1095. No payments will be made to
> Deutsche Bank or its servicer.   In the event that the debtor is not successful
> in the Adversary, the property will be surrendered to Deutsche Bank or its
> assignee, and the debt will be discharged. [3]

On September 23, 2016, Deutsche Bank filed a "Withdrawal of Proof of Claim No.

2" to which the Debtor filed an Objection, stating DB [Deutsche Bank] does not have the

absolute right to withdraw its claim because an Adversary Proceeding has been filed; DB

has accepted its treatment under the plan by failing to object to it, *see* United Student Aid

Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 559 US 260, 176 L. Ed. 2d 158 (2010)."

### III. THE DEBTOR'S VERIFIED COMPLAINT

The Debtor, represented by Shaun M. Ellis, previously filed a Chapter 13 case

almost ten years ago on January 23, 2006.[4]   As part of a "foreclosure rescue scheme," the

---

[3] The Court observes that the amended plan does not comport with Deutsche Bank's
Objection.

[4] In his Complaint, the Debtor stated that he first acquired the property, together with his
former spouse in April of 1997.   In 2001, his former spouse conveyed the property to him.

Debtor voluntarily dismissed his Chapter 13 case and conveyed the property to Alec G.

Sohmer ("Sohmer") on March 24, 2006. The circumstances surrounding the Debtor's

voluntary dismissal of his prior Chapter 13 case are set forth in his Verified Complaint

and are summarized in the decision of the United States Court of Appeals for the First

Circuit in Giuffre v. Deutsche Bank Nat'l Trust Co., 759 F.3d 134 (1st Cir. 2014).  In that

case, the court of appeals, while noting that the Debtor got his home back but had made

"no payment on the loan secured by the mortgage and [was] facing foreclosure as a

result" id. at 135, stated:

> In 2006, struggling to pay the mortgage on his house in Massachusetts,
> Giuffre filed for bankruptcy. On the advice of his attorney, however, he
> voluntarily dismissed his bankruptcy to pursue an alternative "foreclosure
> rescue" scheme. Under the scheme, Giuffre sold his home to a different
> attorney, Alec Sohmer, for $625,000, as reflected in a recorded deed, and
> paid off his preexisting mortgage, on which he apparently owed slightly
> more than $400,000. Sohmer obtained a new mortgage on the property in
> the amount of $500,000 from Option One Mortgage Corporation (which
> later transferred the mortgage to Deutsche Bank). At the same time, Sohmer
> transferred the property for a nominal price to a trust of which he was the
> trustee and Giuffre was the main but not sole beneficiary. Giuffre's
> complaint is silent as to whether he ultimately received any funds from
> these transactions. Sohmer had assured Giuffre that although Giuffre no
> longer owned the property he could reside there while paying rent to
> Sohmer, which would presumably go to the mortgagee, and obtain a new
> mortgage in his own name after two years. This plan soon failed, because
> Sohmer demanded rent payments that Giuffre could not afford—and that
> exceeded the mortgage payments that drove Giuffre into bankruptcy.
> Sohmer eventually initiated eviction proceedings. Sohmer also failed to
> make payments on the new mortgage, and the bank sought to foreclose.
> Soon after, Sohmer filed for bankruptcy, putting the foreclosure on hold.
> Meanwhile, reacting to Sohmer's mistreatment of Giuffre and other
> homeowners, the Massachusetts Attorney General pursued various legal
> remedies. Ultimately, the bankruptcy court approved a settlement that
> aimed to "restore [Sohmer's victims], to the extent possible, to the positions
> they occupied prior to the Foreclosure Avoidance Transactions." *See* In re
> Sohmer, No. 06-14073 (Bankr. D. Mass. 2006), Dkt. 716, at 3. In the

6

settlement, several lenders to which Sohmer gave mortgages, including
Option One, agreed to make certain efforts to mitigate the harm arising
from Sohmer's conduct. The trustee in Sohmer's bankruptcy eventually
conveyed Sohmer's interest in the home to Giuffre.  In 2012, Deutsche Bank
sought relief from the automatic stay to pursue foreclosure proceedings,
but the bankruptcy court held that because the property had been
transferred out of the estate, the stay did not apply.

Giuffre v. Deutsche Bank Nat. Trust Co., 759 F.3d at 136.[5]

The Debtor revealed in his Complaint that he filed an action in the Massachusetts
Land Court seeking a declaration "voiding the mortgage as having been obtained by
fraud, deceit and misrepresentation, and enjoining the defendant, its successors and
assigns, from any attempt to foreclose."  Deutsche Bank removed the action to the United
States District Court for the District of Massachusetts.  On August 27, 2013, the district
court dismissed the Debtor's complaint against Deutsche Bank and its loan servicer.  It
stated:

---

[5] As set forth in the decision of the United States Court of Appeals for the First Circuit,
Sohmer filed his own bankruptcy petition.  The Court takes judicial notice that Sohmer
filed a Chapter 11 bankruptcy petition on November 6, 2006, approximately seven
months after the Option One Mortgage Corporation mortgage was recorded.  Following
the conversion of Sohmer's Chapter 11 case to Chapter 7, and the entry of this Court's
order dated July 20, 2010 denying Sohmer a discharge, see Commonwealth of
Massachusetts v. Sohmer (In re Sohmer), 434 B.R. 234 (Bankr. D. Mass. 2010), Deutsche
Bank filed two motions for relief from the automatic stay to foreclose its mortgage on the
property.  The first motion was filed on February 27, 2012 and the second motion was
filed on September 4, 2012.  Deutsche Bank attached copies of the note and mortgage to
its motions for relief from the automatic stay.  Deutsche Bank withdrew its first motion
on April 16, 2016 because the Chapter 7 Trustee had executed a "Release Deed" to Giuffre
on March 28, 2012 which Giuffre recorded approximately five months later in September
of 2012.  Deutsche Bank filed its second motion prior to the recordation of the Release
Deed. The Court determined on September 6, 2012 that the automatic stay was not
applicable because the property was no longer property of the estate.

The First Circuit ruled narrowly in <u>Culhane</u> [<u>Culhane v. Aurora Loan</u>
<u>Services of Nebraska</u>, 708 F.3d 282 (1st Cir. 2013)].  The holding applies to
challenges to mortgage assignments that would render the assignment
void, not merely voidable. This case presents a different scenario: *Giuffre*
*seeks to challenge the validity of the mortgage itself*, not an assignment. But if
Giuffre, who holds equitable title to his property, lacks standing, then he
has no judicial recourse to ensure a legal foreclosure. Consequently, this
court concludes that in this analogous fact pattern, the First Circuit's
reasoning in <u>Culhane</u> applies. Giuffre has standing to challenge his
mortgage as void.

<u>Giuffre v. Deutsche Bank Nat. Trust Co.</u>, 2013 WL 4587301, at *2 (footnotes omitted,

emphasis supplied).   Nevertheless, the district court determined that the Debtor had

failed to state a claim under Fed. R. Civ. P. 12(b)(6) that the mortgage was void and

entered an order dismissing the complaint.  As noted by the the United States Court of

Appeals for the First Circuit, however,

> Three weeks later, Giuffre filed a motion captioned "Motion for Leave to
> File First Amended Complaint," attaching an amended complaint that
> added detail to his original complaint, lengthening it from thirty-eight
> paragraphs to sixty-five paragraphs. The [district] court denied the motion,
> finding that it "lack[ed] the power to allow amendment of [the] complaint"
> because Giuffre had "not moved for post-judgment relief pursuant to Rule
> 59 or 60." On the same day, Giuffre filed his notice of appeal, stating that
> he was appealing both the dismissal of his complaint and the denial of his
> motion to amend.

<u>Giuffre v. Deutsche Bank Nat. Trust Co.</u>, 759 F.3d at 136–37.  In affirming the district

court's ruling, the court of appeals stated:

> Giuffre's proposed amendments to his complaint do not repair the
> fundamental problems described above with his attempt to hold Deutsche
> Bank responsible for Sohmer's wrongdoing. We therefore affirm the district
> court's denial of Giuffre's motion to amend. *See* <u>Glassman v.</u>
> <u>Computervision Corp.</u>, 90 F.3d 617, 623 (1st Cir. 1996) (holding that a
> motion to amend should be denied as futile if "the complaint, as amended,
> would fail to state a claim upon which relief could be granted."). Giuffre's
> amended complaint does gesture towards a claim that Option One knew or

should have known of Sohmer's fraud, but it ultimately falls far short of supporting such a claim. Stripping away several purely conclusory allegations, Giuffre's amended complaint alleges only that Option One should have known that Giuffre "was the individual who would be paying the mortgage" because Giuffre was a beneficiary of the trust holding the property, and that the bank nevertheless "conducted no due diligence to determine whether Giuffre could afford the mortgage." But the relevant fraud here is not that Giuffre had too little financial capacity. Rather, the underlying fraud as alleged by Giuffre is that Sohmer was lying and self-dealing. Giuffre's allegations offer no hint as to how Option One should have discovered that fraud, even if Giuffre were correct (which we doubt) that Option One owed a duty to the beneficiaries of a trust to which the bank's borrower intended to transfer the property. *Giuffre's amended complaint also includes two entirely new counts raising issues unrelated to Sohmer's fraud, one questioning whether Deutsche Bank holds the promissory note and the other related to the securitization of the mortgage. Giuffre has never claimed that he was unaware of the facts giving rise to these new claims when he first filed the suit eighteen months before the proposed amendment.* We are confident that the district court would have properly rejected Giuffre's last-ditch attempt to mutate the case to avoid dismissal, pressed after more than a year and a half of litigation. In short, this is a classic case of "undue delay." *See* Nikitine v. Wilmington Trust Co., 715 F.3d 388, 390–91 (1st Cir. 2013). In any event, Giuffre fails to adequately plead facts supporting his new claims, and so they are also futile.

Giuffre v. Deutsche Bank Nat. Trust Co., 759 F.3d at 139 (emphasis supplied).

## IV. LEGAL PRINCIPLES

A. Dismissal Standard

According to the court in Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC), 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013),

Following the Supreme Court's decision in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), courts use a two-prong approach when considering a motion to dismiss. *See* L–7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011); Harris v. Coleman, 863 F.Supp.2d 336, 340 (S.D.N.Y. 2012); Bektic–Marrero v. Goldberg, 850 F.Supp.2d 418, 425 (S.D.N.Y. 2012); King County, Wash. v. IKB Deutsche Industriebank AG, 863 F.Supp.2d 288, 297 (S.D.N.Y. 2012), *reh'g denied*, 863 F.Supp.2d 317 (S.D.N.Y.2012). First, the court must accept all factual allegations in the

complaint as true, but should ignore legal conclusions clothed in factual garb. Iqbal, 556 U.S. at 677–79, 129 S.Ct. 1937; L–7 Designs, 647 F.3d at 430; Boykin v. KeyCorp, 521 F.3d 202, 204 (2d Cir.2008). Second, the court must determine if these well-pleaded factual allegations state a "plausible claim for relief." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937. The only allegations that may survive a motion to dismiss are those that cross "the line between possibility and plausibility of entitle[ment] to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quotations omitted). Whether entitlement to relief is plausible "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." L-7 Designs, 647 F.3d at 430. Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663–64, 129 S.Ct. 1937. A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663, 129 S.Ct. 1937.

In re Residential Capital, LLC, 489 B.R. at 494.   In addition, as noted by the court in

Windham v. JPMorgan Chase Bank, N.A., Case No. CV 15-12809-FDS, 2016 WL 1642582

(D. Mass. Apr. 25, 2016),

When deciding a Rule 12(b)(6) motion, courts are not limited to the complaint, but may use information "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice," such as records from prior cases in this and other jurisdictions. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011); see also Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000) ("[A] court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment.").

Windham v. JPMorgan Chase Bank, N.A., 2016 WL 1642582, at *2.   See also Rodi v.

Southern N.E. Sch. of Law, 389 F.3d 5, 11 (1st Cir. 2004).[6]

---

[6] The court in Rodi stated:

Significantly for purposes of the Deutsche Bank's motion, courts may dismiss complaints under Rule 12(b)(6) based on affirmative defenses, such as res judicata, otherwise known as claim preclusion because, under the doctrine of res judicata, parties are precluded from relitigating issues that were or could have been raised in a prior action. According to the United States Court of Appeals for the First Circuit,

> In an appropriate case, an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim. *See, e.g.*, Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001); LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir.1998); Kale v. Combined Ins. Co., 924 F.2d 1161, 1165 (1st Cir.1991). The affirmative defense of res judicata is no exception. *See, e.g.*, Boateng, 210 F.3d at 60; Kale, 924 F.2d at 1165. Even without a motion, "a court on notice that it has previously decided an issue may dismiss the action sua sponte, consistent with the res judicata policy of avoiding judicial waste." Bezanson v. Bayside Enterps., Inc., 922 F.2d 895, 904 (1st Cir. 1990).

---

> In ruling on whether a plaintiff has stated an actionable claim, an inquiring court, be it a trial or appellate court, must consider the complaint, documents annexed to it, and other materials fairly incorporated within it. In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15–16 (1st Cir. 2003); Cogan v. Phoenix Life Ins. Co., 310 F.3d 238, 241 n. 4 (1st Cir. 2002). This sometimes includes documents referred to in the complaint but not annexed to it. *See* Coyne v. Cronin, 386 F.3d 280, 285–86 (1st Cir. 2004); Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir.1988). Finally, the jurisprudence of Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice. Colonial Mortg. Bankers, 324 F.3d at 15–16; Boateng v. InterAmerican Univ., 210 F.3d 56, 60 (1st Cir. 2000).

Rodi v. S. New England Sch. of Law, 389 F.3d at 11. This Court has taken judicial notice of documents filed in the Debtor's main case, as well as documents filed in the bankruptcy case of Alec G. Sohmer, Case No. 06-14073, with respect to documents or actions referenced in the Verified Complaint and the decision of the First Circuit in Giuffre v. Deutsche Bank Nat'l Trust Co., 759 F.3d 134 (1st Cir. 2014).

Banco Santander De Puerto Rico v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.), 324 F.3d 12, 16 (1st Cir. 2003). *See also* In re Residential Capital, LLC, 489 B.R. at 494-95 (citations omitted).

B. Res Judicata

In McLarnon v. Deutsche Bank Nat'l Trust Co., C.A. No. 14-13233-FDS, 2014 WL 5317813 (D. Mass. Oct. 17, 2014), the United States District Court for the District of Massachusetts discussed the doctrine of res judicata, observing:

> "Under Massachusetts principles of claim preclusion, a final judgment in one action generally precludes the plaintiff from bringing another action against the same defendant if the second action arises out of the same transaction or occurrence as the prior action." Hermes Automation Technology, Inc. v. Hyundai Electronics Industr., 915 F.2d 739, 750 (1st Cir. 1990). "Once there has been an adjudication on the merits, federal law stipulates that all claims which are 'part of the same cause of action' are extinguished, whether or not actually asserted in the original action." Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1164–65 (1st Cir. 1991). The preclusive effect of a state-court judgment is governed by state law, and the preclusive effect of a federal-court judgment is governed by federal law. *See* Cohen v. Shea, 788 F.Supp. 66 (D. Mass. 1992). However, the conditions for application of the doctrine are essentially the same. There must be "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." In re Iannochino, 242 F.3d 36, 43 (1st Cir. 2001) (quoting Mass. Sch. of Law, Inc. v. American Bar Ass'n, 142 F.3d 26, 37 (1st Cir. 1998)); *see* Kobrin v. Bd. of Registration in Med., 444 Mass. 837, 843, 832 N.E.2d 628 (2005).

2014 WL 5317813 at *3.  *See also* Baby Furniture Warehouse Store, Inc. v. Meubles D & F Ltée, 75 Mass. App. Ct. 27, 911 N.E.2d 800, 2015 WL 1443155  (Mass App. Ct. 2009).[7]

---

[7] The Massachusetts  Appeals Court stated:

> Res judicata is a generic term encompassing both claim and issue preclusion. Heacock v. Heacock, 402 Mass. 21, 23 n. 2, 520 N.E.2d 151 (1988).

With respect to the first condition, the presence of a final judgment on the merits, the United States Court of Appeals of the First Circuit stated: "Ordinarily, a dismissal for failure to state a claim is treated as a dismissal on the merits, and there is abundant case law to this effect." <u>AVX Corp. v. Cabot Corp.</u>, 424 F.3d 28, 30 (1st Cir. 2005)(citing <u>United States ex rel. Karvelas v. Melrose–Wakefield Hosp.</u>, 360 F.3d 220, 241 (1st Cir.), *cert. denied*, 543 U.S. 820, 125 S.Ct. 59, 160 L.Ed.2d 28 (2004); <u>Acevedo–Villalobos v. Hernandez</u>, 22 F.3d 384, 388–89 (1st Cir.), *cert. denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994)).

Here we have a final judgment on the merits and identical parties. Accordingly, because the first and third elements cannot reasonably be disputed, the focus of this Court's inquiry then must be whether there is an identity of the causes of action. In

---

Here, we deal with claim preclusion. "The doctrine of res judicata is founded on the necessity for finality in litigation." <u>Wright Mach. Corp. v. Seaman–Andwall Corp.</u>, 364 Mass. 683, 688 307 N.E.2d 826 (1974). "Considerations of fairness and the requirements of efficient judicial administration dictate that an opposing party in a particular action as well as the court is entitled to be free from continuing attempts to relitigate the same claim." <u>Ibid.</u> . . .

There are three required elements for the invocation of claim preclusion: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." <u>Kobrin v. Board of Registration in Med.</u>, 444 Mass. 837, 843, 832 N.E.2d 628 (2005), quoting from <u>DaLuz v. Department of Correction</u>, 434 Mass. 40, 45, 746 N.E.2d 501 (2001). . . . [T]he movant . . . bears the burden of establishing all three elements. *See* <u>Longval v. Commissioner of Correction</u>, 448 Mass. 412, 416–417, 861 N.E.2d 760 (2007).

<u>Baby Furniture Warehouse Store, Inc. v. Meubles D & F Ltée</u>, 2015 WL 1443155 at *2.

making that determination, the United States Court of Appeals for the First Circuit in

Iannochino v. Rodolakis (In re Iannochino), 242 F.3d 36 (1st Cir. 2001), stated:

> In determining whether "causes of action are sufficiently related to support
> a res judicata defense," we have "adopted a transactional approach." Mass.
> Sch. of Law, Inc. v. American Bar Assoc., 142 F.3d 26, 38 (1st Cir.1998). We
> have relied upon the three factors set forth in the Restatement to guide our
> analysis of whether two claims are actually part of a single cause of action.
> See Porn v. Nat'l Grange Mut. Ins. Co., 93 F.3d 31, 34 (1st Cir. 1996). Though
> none of these factors is determinative, and the three factors do not exhaust
> all factors that may be considered, they provide a helpful framework for
> analyzing the Iannochinos' contentions. See id. First, we look to "whether
> the facts are related in time, space, origin or motivation," second, to
> "whether they form a convenient trial unit," and third, to "whether their
> treatment as a unit conforms to the parties' expectations." Id. (quoting
> Restatement (Second) of Judgments § 24 (1982)).

Iannochino, 242 F.3d at 46.  Similarly the district court in McLarnon, stated:

> [T]o determine whether the causes of action are sufficiently identical, both
> Massachusetts courts and federal courts apply a transactional approach.
> Iannochino, 242 F.3d at 46; see Anderson v. Phoenix Inv. Counsel of Boston,
> Inc., 387 Mass. 444, 449, 440 N.E.2d 1164 (1982) (holding that claim
> preclusion bars "relitigation of issues that were or could have been raised in
> the original action"); Baby Furniture Warehouse Store, Inc. v. Meubles D &
> F Ltée, 75 Mass. App. Ct. 27, 34, 911 N.E.2d 800 (2009). Thus, a claim that
> "grows out of the same transaction or set of related transactions as the
> previously decided claim" is treated as preclusive, even if there are slight
> changes to the claims or newly asserted legal theories. AVX Corp., 424 F.3d
> at 31; see AndrewsClarke, 157 F.Supp.2d at 102.

McLarnon, 2014 WL 5317813 at * 3.  In Massachusetts Sch. of Law at Andover v. Am. Bar

Ass'n, 142 F.3d 26 (1st Cir. 1998), the First Circuit elaborated on the transactional

approach:

> "Under this approach [the transactional approach], a cause of action is
> defined as a set of facts which can be characterized as a single transaction
> or series of related transactions." Apparel Art Int'l, Inc. v. Amertex Enters.,
> Ltd., 48 F.3d 576, 583 (1st Cir. 1995). This boils down to whether the causes
> of action arise out of a common nucleus of operative facts. See Gonzalez, 27

14

F.3d at 755. In mounting this inquiry, we routinely ask "whether the facts
are related in time, space, origin, or motivation, whether they form a
convenient trial unit, and whether their treatment as a unit conforms to the
parties' expectations." Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st
Cir.1 992) (quoting Restatement (Second) of Judgments § 24 (1982)).

Massachusetts Sch. of Law at Andover, Inc., 142 F.3d at 38.  See also O'Connell v. White,

87 Mass. App. Ct. 1113, 28 N.E.3d 12, 2015 WL 1443155 (2015).[8]  Moreover,

"Massachusetts courts bar the relitigation of any claims which the plaintiff had the full

and fair opportunity to litigate in a prior action. See Lynch v. Bd. of State Exam'rs of

Electricians, 218 F.Supp.2d 3, 8 (D. Mass. 2002). Thus, claims not actually raised will be

barred if they arise from of [sic] the same common nucleus of facts as the claims that were

litigated. Id." Kucharski v. Tribeca Lending Corp., 620 F.Supp.2d 147, 150 (D. Mass.

2009). See also Johnson v. Wells Fargo Bank, C.A. No. 14-11274-MPK, 2014 WL 3347939,

at *2 (D. Mass. July 7, 2014)("With respect to the second element, causes of actions are

identical if they derive "from the same transaction or series of connected transactions.").

---

[8] In that case, the Massachusetts Appeals Court observed the following:

[I]n determining whether the second element is satisfied, we inquire
"[w]hether the facts are related in origin or motivation and whether they
form a convenient trial unit." St. Louis v. Baystate Med. Center, Inc., 30
Mass. App. Ct. 393, 399 (1991). See Charlette v. Charlette Bros. Foundry, 59
Mass. App. Ct. 34, 45 (2003), quoting from TLT Constr. Corp., supra at 8
[TLT Constr. Corp. v. A. Anthony Tappe & Assocs., 48 Mass. App. Ct. 1
(1999)] ("The statement of a different form of liability is not a different cause
of action, provided it grows out of the same transaction, act, [or] agreement,
and seeks redress for the same wrong"). Under an alternative approach, we
can also "inquire into the commonness" of the facts and evidence required
to prove the claims or defenses in both adjudications. Bradford v. Richards,
11 Mass. App. Ct. 595, 599 (1981).

O'Connell, 2015 WL 1443155 at *3.

## V. DISCUSSION

Deutsche Bank argues that Giuffre has failed to state a claim for which relief may be granted based upon the principle of res judicata because the allegations and claims in the Complaint could have been, and should have been, brought in his previous action he commenced against Deutsche Bank. In addition, it contends that Giuffre's claims fail as a matter of law because the mortgage is enforceable against the property. Relying upon Johnson v. Home State Bank, 501 U.S. 78, 84 (1991), it rejects Giuffre's argument that, because he is not liable on the note, the mortgage is unenforceable against his property.

The Court agrees that res judicata applies to Count I and, accordingly, shall enter an order dismissing that count of the Debtor's Verified Complaint for failure to state a claim. Although the Debtor could not have objected to Deutsche Bank's proof of claim with specific reference to 11 U.S.C. § 502(b)(1) because he did not have a pending bankruptcy case at the time he commenced an action in the Land Court, which was removed to the the United States District Court, the relief he seeks, namely a determination that Deutsche Bank's mortgage is void because he did not sign the note, is the same relief he sought or attempted to seek via amendment to his complaint in the district court.

As noted above, the only issue is whether there is sufficient identicality between the causes of action asserted in the earlier suit and the present action. Res judicata applies to actions that were or could have been brought using the transactional approach adopted by the United States Court of Appeals for the First Circuit. *See* Massachusetts Sch. of Law, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998). Indeed, as both the district court and

the court of appeals determined, the Debtor attempted to amend his complaint to include new counts "addressing issues unrelated to Sohmer's fraud, one questioning whether Deutsche Bank holds the promissory note and the other related to the securitization of the mortgage." 759 F.3d at 139. It now appears that the Debtor is again attempting to assert claims that arise out of the very facts alleged in the complaint he initially filed in the Land Court. Examining the factors set forth in In re Iannochino, 242 F.3d at 46, namely 1) "whether the facts are related in time, space, origin or motivation," 2) "whether they form a convenient trial unit," and 3) "whether their treatment as a unit conforms to the parties' expectations," this Court concludes that res judicata applies. The answers to those questions compels the conclusion that all the facts pertinent to the Debtor's present claim under § 502(b)(1), namely that the mortgage is unenforceable, existed and were identical to those pertinent to the Debtor's asserted claims set forth in the complaint considered by the district court and court of appeals. The thrust of the Debtor's prior complaint and the instant Verified Complaint are the same - - the enforceability of the mortgage executed by Sohmer encumbering the property the Debtor obtained by way of a Release Deed from the Chapter 7 Trustee of Sohmer's bankruptcy estate.

Even assuming res judicata does not apply, however, the Court determines that the Debtor's Complaint fails to state a plausible claim for relief. This Court concludes that Deutsche Bank's mortgage constitutes a claim or a "right to an equitable remedy" and its mortgage is not rendered unenforceable by application of the Bankruptcy Code. Indeed, as recognized by the court in In re Cady, 440 B.R. 16, 22 (Bankr. N.D. N.Y. 2010),

17

> The majority of courts outside the Second Circuit . . . recognize a debtor's right to cure prepetition mortgage defaults through a chapter 13 plan even though that debtor lacks contractual privity with the mortgagee. The Bankruptcy Court for the Middle District of Florida was presented with this issue in In re Curinton. Unlike Rutledge [In re Rutledge, 208 B.R. 624 (Bankr. E.D.N.Y. 1997], and Lumpkin, [In re Lumpkin, 144 B.R. 240 (Bankr. D. Conn.1992)], Curinton [In re Curinton, 300 B.R. 78 (Bankr. M.D. Fla. 2003)]; did not involve an intra-family transfer of property. However, the chapter 13 debtor in Curinton lacked privity with the mortgagee. The Curinton court provided a detailed analysis of the split among the courts regarding the issue and explained that the difference arises from how broadly the courts interpret the term "claim." The Curinton court followed the predominant view that the Johnson decision permits a debtor to include a claim in a plan even in the absence of privity, making clear that "it is sufficient that a debtor owns property against which a creditor holds a lien for that property to be included in the debtor's bankruptcy estate."

In re Cady, 440 B.R. 16, 22 (Bankr. N.D. N.Y. 2010).  See also Summers v. Fin. Freedom

Acquisition LLC, 807 F.3d, 351, 357 (1st Cir. 2015);[9] and In re Lozada, 446 B.R.  604, 606

---

[9] In Summers, the court observed:

> Foreclosure is an equitable remedy. See Benitez v. Bank of Nova Scotia, 125 F.2d 519, 520 (1st Cir. 1942); Walsh v. Morgan, 60 R.I. 349, 198 A. 555, 562 (1938). "The land is the real defendant in [a foreclosure] proceeding." Hunt v. Darling, 26 R.I. 480, 59 A. 398, 399 (1904). A foreclosure, though not literally a proceeding in rem, "is in the nature of such a proceeding, and is not intended ordinarily to act in personam." Burgess v. Souther, 15 R.I. 202, 2 A. 441, 443 (1885). Absent a statute to the contrary, a mortgagee can both sue the parties to the mortgage at common law and pursue foreclosure. See Hunt, 59 A. at 399. If a deficiency results from a foreclosure sale, an action on the mortgage note normally will lie to recover that deficiency. See Burgess, 2 A. at 443.

> ***

> These hoary tenets have persisted substantially intact to the present day. A compelling analogy can be found in the realm of bankruptcy law. There, a creditor may recover the deficiency on a mortgage loan through "an action against the debtor in rem," notwithstanding the debtor's discharge in bankruptcy. Couture v. Pawtucket Credit Union, 765 A.2d 831, 833

(Bankr. M.D. Fla. 2011) (summarizing applicable law).[10] *But see* <u>Pescrillo v. HSBC Bank</u>

<u>U.S.A., Nat. Ass'n</u>, C.A. No. No. 14–CV–1083S, 2015 WL 417659 (W.D.N.Y. Jan. 30, 2015)

---

(R.I.2001) (citing <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991)); *see* 11 U.S.C. § 522(c)(2).

<u>Summers v. Fin. Freedom Acquisition LLC</u>, 807 F.3d at 357 (footnote omitted).

[10]  The court in <u>Lozada</u>, stated:

> HSBC holds a mortgage on the Property owned by the Debtor. Consequently, the Debtor may address HSBC's claim in her Chapter 13 case, *even though the Debtor did not sign the Promissory Note and Mortgage that created the debt.*
>
> > The Supreme Court in <u>Johnson</u> has told us that a debtor can include a claim in a Chapter 13 plan, even when the debtor is not personally liable for the underlying debt. Recall that under <u>Johnson</u>, a creditor need not hold a personal claim against a debtor for a creditor's claim to be included in the debtor's bankruptcy estate; it is sufficient that a debtor owns property against which a creditor holds a lien for that property to be included in the debtor's bankruptcy estate. Also, as <u>Johnson</u> acknowledged, the statutory language of §§ 101(5), 502(b)(1), and 102(2) of the Bankruptcy Code plainly indicates that a claim against property held by a debtor is sufficient to constitute a claim within a Chapter 13 setting.

<u>In re Curinton</u>, 300 B.R. 78, 84–85 (Bankr. M.D. Fla. 2003) (citing <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991)). Since a debtor "can include an *in rem* claim in a Chapter 13 plan," the Court in <u>Curinton</u> denied the creditor's motion for relief from the automatic stay. <u>In re Curinton</u>, 300 B.R. at 86.

In <u>In re Cady</u>, 440 B.R. 16 (Bankr. N.D.N.Y. 2010), the Court recently reached the same conclusion. In that case, the Court found that property transferred from the borrower to the debtor without the lender's consent was "property of the estate and that liens encumbering the Property are claims against the estate which the Debtor may address in her chapter 12 plan." <u>In re Cady</u>, 440 B.R. at 23.

(noting split of authority, distinguishing <u>Johnson</u> due to lack of privity, and affirming order granting mortgagee relief from stay).   In this case, as noted above, the Debtor initially sought to satisfy arrearages owed to Deutsche Bank through his initial Chapter 13 plan which was predicated upon the surrogate claim he later filed on its behalf.

The Debtor's reliance upon, inter alia, <u>Eaton v. Fed. Nat's Mortg. Ass'n</u>, 462 Mass. 569 (2012), and <u>JPMorgan Chase & Co., Inc. v. Casarano</u>, 81 Mass. App. Ct. 353 (2012), is unavailing.   Both decisions are readily distinguishable.   <u>Casarano</u>, which involved a lost note, is inapposite.   In that case, the court observed:  "Without a valid promissory note, a mortgage is generally not enforceable."   81 Mass. App Ct. at 355-56.   Because the terms of the lost note could not be adequately ascertained, the court determined the mortgage was not enforceable. In the instant case, the Debtor did not allege in his Verified Complaint that the note has been lost.   Indeed, as observed above in note 5, *supra*, Deutsche Bank attached copies of the note and mortgage to its motions for relief from the automatic stay filed in Sohmer's bankruptcy case.

In <u>Eaton</u>, the Supreme Judicial Court held that a "mortgagee," entitled to foreclose under Mass. Gen. Laws ch. 244, § 14 must be either a mortgagee who also holds the underlying mortgage note or one who, although not the note holder, acts as the authorized agent of the note holder, to stand "in the shoes" of the "mortgagee." <u>Id.</u> at

---

<u>In re Lozada</u>, 446 B.R. at 606 (Bankr. M.D. Fla. 2011)(emphasis supplied).  *See also* <u>In re Michaud</u>, 548 B.R. 582 (Bankr. S.D. Fla. 2016); <u>In re Harmon</u>, Case No. 3:15-bk-3407- PMG, 2015 WL 8249995 (Bankr. M.D. Fla. Dec. 2, 2015); <u>In re McNeal</u>, Case No. 3:11-bk-3148- PMG, 2011 WL 4381725 (Bankr. M.D. Fla. Sept. 1, 2011).

584–586, 969 N.E.2d 1118.[11]   In the instant case, if Deutsche Bank seeks to foreclose the mortgage on the property, which was executed by Sohmer, it must demonstrate that it holds the underlying mortgage note or is authorized as agent of the holder to stand in the shoes of the mortgagee.   Even assuming, as the Debtor contends, that a note and mortgage are a single contract, see Kattar v. Demoulas, 433 Mass. 1, 11 n. 7, 739 N.E.2d 246 (2000), his conclusion that, because the note is unenforceable against him personally, the mortgage also is unenforceable does not withstand scrutiny.   The note executed by Sohmer remains enforceable against him as his discharge was denied.   Because the Debtor is not liable on the note, Deutsche Bank, if it were to foreclose its mortgage, would not be able to seek any deficiency from the Debtor, but it could do so against Sohmer.   The

---

[11]   In Lackie v. Deutsche Bank Nat'l Trust Co., No. 15-30121-MGM, 2016 WL 4076830 (D. Mass. July 29, 2016), the court observed:

> Massachusetts "law is clear that 'a mortgage and the underlying note can be split.'"  Foregger v. Residential Credit Solutions, Inc., 2013 WL 3208596, at *5 (D. Mass. June 21, 2013) (quoting Eaton v. Federal Nat'l Mortgage Assoc., 969 N.E.2d 1118, 1124 (Mass. 2012)).

> > In Massachusetts, the note and the mortgage need not be held by the same entity . . . . Massachusetts law makes pellucid that the mortgage and the note are separate instruments; when held by separate parties, the mortgagee holds a bare legal interest and the noteholder enjoys the beneficial interest. Eaton v. Federal Nat. Mortg. Ass'n, 969 N.E.2d 1118, 1124 (Mass. 2012). The mortgagee need not possess any scintilla of a beneficial interest in order to hold the mortgage.

> Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 292-93 (1st Cir. 2013).

Lackie, 2016 WL 4076830, at *3.

Debtor has not and cannot establish that the owner of property subject to a mortgage has to be personally liable on the note for the mortgage to be enforceable.  Indeed, numerous debtors seek the ability to address mortgage claims affecting their property even if they have not executed either the note or mortgage. *See, e.g.,* <u>In re Lozada</u>, 446 B.R. 604 (Bankr. M.D. Fla. 2011).

In sum, the Debtor's argument that because he owes no debt to Deutsche Bank it does not have an enforceable claim against his property is belied by 1) the Release Deed granted to him by the Chapter 7 Trustee in Sohmer's bankruptcy case; 2) Sohmer's continuing liability on the note owing to the denial of his discharge; and 3) the decision of the Supreme Court in <u>Johnson v. Home State </u>Bank, 501 U.S. 78 (1991).  The Debtor's attempt to distinguish <u>Johnson</u> is unavailing.  The absence of liability on the note on the part of the Debtor (rather than Sohmer) does not render the mortgage unenforceable where Sohmer, whose discharge was denied, remains liable on the note.

With respect to the Debtor's statute of limitations count, the Debtor's Complaint fails to set forth a plausible claim to relief.  Sohmer's bankruptcy tolled the running of the statute of limitations with respect to Deutsche Bank's enforcement of the note and mortgage from the commencement of is case on November 6, 2006 until the Trustee conveyed the property to the Debtor on March 28, 2012 owing to 11 U.S.C. § 108(c). Deutsche Bank could not commence an action against Sohmer to foreclose its mortgage until it obtained relief from the automatic stay or the property was no longer property of the estate.  *See* 11 U.S.C. § 362(c).  *See* <u>Shamus Holdings, LLC v. LBM Fin., LLC (In re Shamus Holdings, LLC)</u>, 642 F.3d 263, 264 (1st Cir. 2011)("Under ordinary circumstances,

the Bankruptcy Code tolls the running of the limitations period from the filing date until the automatic stay is either lifted or dissolved."); and Hermosilla v. Hermosilla (In re Hermosilla), 430 B.R. 13, 20 (Bankr. D. Mass. 2010), *aff'd*, 447 B.R. 661 (D. Mass. 2011).

The Debtor's contention, made without legal authority, that, because there was no tolling of an *in personam* action against him as beneficiary of the nominee trust to which Sohmer conveyed the property, the six year statue of limitation applies to the note and prevents Deutsche Bank from proceeding either *in personam* or *in rem*.  Deutsche Bank did not and cannot seek enforcement of the note against Giuffre, whether individually or as beneficiary of the nomine trust created by Sohmer, because he did not execute the note. As the court in In re Residential Capital, LLC, 489 B.R. at 494, observed:  "[c]ourts do not make plausibility determinations in a vacuum; it is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" 489 B.R. at 494 (citing Iqbal, 556 U.S. at 663–64, 129 S.Ct. 1937).  Well-settled principles of contract law dictate the result that Deutsche Bank could not and cannot enforce the note against the Debtor.  Deutsche Bank can seek enforcement of the note against Sohmer, but was prevented from doing so while his case was pending and until the property was no longer property of his bankruptcy case.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order granting Deutsche Bank's

Motion to Dismiss.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  October 18, 2016